IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(KANSAS CITY DOCKET)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 12-20041-01/02-KHV-DJW |
| | ) |
| **ANTHONY RENFROW** | ) |
| and | ) |
| **WILLIAM "BILL" FOX**, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

# INDICTMENT

The Grand Jury charges:

<u>Background</u>

At all times relevant to this Indictment:

**14DailyPlus.com**

1.  14DailyPlus.com was an Internet website that fraudulently offered opportunities for "investors" to join as members and use an "autosurf" form of advertising.  14DailyPlus.com was a company incorporated in Nevada with a registered address in Las Vegas, Nevada.

2.  "Autosurfing" is a form of advertising in which "investors" in 14DailyPlus.com were purportedly paid to view an advertiser's website for a certain period of time through the 14DailyPlus.com website.

3.  14DailyPlus.com "autosurf investors" paid a membership fee and were promised a per-site commission return on the fee.  "Autosurf investors" could pay an

additional fee to upgrade their level, with commissions based on the member's viewing

a minimum number of sites.  14DailyPlus.com offered a return of 14% per day for a

period of ten days totaling a 140% return on the investment.

4.  To achieve the rate of return, 14DailyPlus.com reportedly pooled the capital

investments of all members, which was used to purchase advertising units on the

Internet with Fortune 500-type companies.  Internet visits to these particular advertisers'

websites through 14DailyPlus.com then provided a return on the "investment" into the

advertising units.

**Individuals**

5.  Defendant Anthony Renfrow (Renfrow) was the founder of 14DailyPlus.com,

which commenced operations in or about March 2006.  Success Marketing Systems

was a business name utilized by Renfrow for 14DailyPlus.com.

6.  Defendant William "Bill" Fox (Fox) was the primary promoter and recruiter of

14DailyPlus.com in the Kansas City metropolitan area beginning in the summer of 2006.

Eagle Marketing Group, LLC was incorporated in or about January 2006 in the State of

Kansas, with defendant Fox as the registered agent.

**Financial Institutions**

7.  Heritage Community Credit Union was a financial institution in Rancho

Cordova, California, the accounts of which were insured by the National Credit Union

Share Insurance Fund.  Anthony Renfrow d.b.a. Success Marketing Systems

established account #XX8622 before January 2006.  Anthony Renfrow also established

account #XX4422 at Heritage Community Credit Union before January 2006.

8.  Bank of America was a financial institution, the deposits of which were insured

2

by the Federal Deposit Insurance Corporation, with its corporate headquarters in Charlotte, North Carolina, but with branches throughout California, Kansas, Missouri, and elsewhere.  Anthony Renfrow d.b.a. Success Marketing Systems established account #XXXXXX4596 in or about August 2006. Anthony Renfrow established account #XXXXXX6504 at Bank of America in or about July 2006.

9.  SafePay Solutions, Inc. was a financial institution established in Reno, Nevada, which was an online payment processor that engaged in the business of transmission of funds.  SafePay Solutions, Inc. had account XXXXXX1533 and XXXXXX3103 at Bank of America.

10.  E-Gold Ltd. was a financial institution operated by Gold and Silver Reserve, Inc., located in Melbourne, Florida, which was an online digital currency business that offered an exchange of e-metal accounts for consumers, which enabled account holders to use gold, silver, or other precious metals as a medium of exchange.

11.  Anygoldnow was a financial institution in San Diego, California, that conducted currency exchanges and was a dealer in commodities and precious metals.

**Scheme to Defraud**

12.  During the period from in or about March 2006, to in or about May 2007, in the District of Kansas and elsewhere, RENFROW and FOX, together with each other and others, both known and unknown to the Grand Jury, knowingly devised a scheme to defraud individuals to join 14DailyPlus.com as "investors," and to obtain money and property by means of material false and fraudulent pretenses, representations and promises made to individuals to convince them to join 14DailyPlus.com.

13.  It was part of the scheme to defraud and to obtain money and property by

3

means of material false and fraudulent pretenses, representations, and promises, and in furtherance of it, that the defendants knowingly and intentionally engaged in and caused the following activities:

a.  Recruited individuals to become investors in 14DailyPlus.com, when in truth and in fact there was no investment vehicle;

b.  Enticed purported investors with the promise of a 14% daily return on the purported investment, when in truth and in fact such a return was completely unrealistic;

c.  Falsely promised a return on the purported investment to be realized by merely clicking on certain web pages for a limited amount of time each day;

d.  Recruited additional "investors" used as the basis for the individuals to receive the "return" on the original "investment," when in truth and in fact no such returns were made to the "investors";

e.  Solicited "investment" funds to be paid in cash up to $9,000, which made the tracing of funds more difficult and avoided currency transaction reporting requirements;

f.  Regularly conducted conference calls via telephone and Internet for recruitment of new "investors" and conveying assurances of the program, when in truth and in fact, these were utilized to lull the individuals into believing the program was a legitimate investment vehicle; and

g.  Promised returns on the "investments" despite having no secured method to process payment of the investment returns.

<u>Count 1</u>

14.  Paragraphs 1-13 are incorporated as though fully set out herein.

15.  Beginning in or about March 2006, the exact date being unknown to the Grand Jury, and continuing to on or about May 16, 2007, both dates being approximate and inclusive, in the District of Kansas and elsewhere, the defendants,

ANTHONY RENFROW<br>
and<br>
WILLIAM "BILL" FOX,

knowingly and intentionally conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: wire fraud, in violation of Title 18, United States Code, Sections 2 and 1343; and engaging in monetary transactions greater than $10,000, in violation of Title 18, United States Code, Sections 2 and 1957.

**Object of Conspiracy**

16.  It was a part and object of the conspiracy that RENFROW, FOX, and their coconspirators, willfully and knowingly devised a scheme to defraud investors through 14DailyPlus.com and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme to defraud, knowingly and intentionally caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme to defraud individuals in violation of Title 18, United States Code, Sections 2 and 1343.

17.  It was a further part and object of the conspiracy that RENFROW, FOX, and their co-conspirators, knowingly engaged in monetary transactions by, through, and to

5

financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, through deposits, withdrawals, and transfers of U.S. currency, funds, and monetary instruments, such property having been derived from wire fraud, which is a specified unlawful activity, in violation of Title 18, United States Code, Sections 2 and 1957.

**Manner and Means**

18.  It was part of the conspiracy that the founder and promoters of 14DailyPlus.com established an Internet website that appeared as though individuals could make investments and reap large returns.

19.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com falsely promised 14% per day return on the purported investment.

20.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com solicited investments in amounts up to $9,000 cash.

21.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com falsely promised a greater return on the investment if more money was invested.

22.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com encouraged investors to reinvest all returns into the program.

23.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com regularly conducted conference calls via telephone and Internet to recruit individuals, encourage more investments, and reassure the soundness of the investments.

24.  It was further part of the conspiracy that the founder and promoters of

14DailyPlus.com deposited the invested funds into their personal accounts.

25.  It was further part of the conspiracy that the founder and promoters of 14DailyPlus.com used the invested money for personal purposes and did not pay out returns to the "investors."

**Overt Acts**

26.  In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the District of Kansas and elsewhere:

**Recruiting "Investors"**

a.  During a conference call with Matt Becker, Renfrow assured 14DailyPlus.com investors their funds were safe and that no one would lose their funds or investment despite the delay in payments being made to the investors. Renfrow asserted the delay in payments of returns was due to problems associated with the Internet payment entities, and nothing more.

b.  Fox recruited Eric Fellows to become part of 14DailyPlus.com by making an "investment" in 14DailyPlus.com, and then earning a "return" on that investment by merely viewing advertising sites established through 14DailyPlus.com.  The "earnings" were to be credited to the "investor's" online account and it was recommended that earnings remain in the account.

c.  Renfrow reported to Charles Lunsford that investors were not being paid because cyber thieves had compromised 14DailyPlus.com's E-Gold account, so the funds were not available to be disbursed.

7

d.  Fox told Aubrey Meyer that she could earn a 40% return on her investment with 14DailyPlus.com, and was assured she would at least get her initial investment returned.

e.  Fox personally placed a telephone call to Robert Montgomery to congratulate him for recruiting others to join 14DailyPlus.com.

f.  Renfrow personally met with James Oliver in Sacramento, California, and showed Mr. Oliver office space as a means of satisfying concerns whether 14DailyPlus.com was a legitimate business.  Mr. Oliver participated in conference calls with Renfrow, who provided various reasons for lack of payments to the investors.  Renfrow's explanation for lack of payment included a tale that his E-Gold account had been "hacked," so Renfrow was awaiting pay-out from another investment to then satisfy payments in 14DailyPlus.com.

g.  During a conference call with Russ Pitts, Fox stated he had made $250,000 in six months through 14DailyPlus.com, and that his mother-in-law had made $60,000.  Fox told Mr. Pitts that participants in 14DailyPlus.com would not be paid if they did not recruit other people to join 14DailyPlus.com.

h.  During a conference call with Russ Pitts, Renfrow directed people to not refer to 14DailyPlus.com as an "investment."

i.  During a conference call with James Rizqalla, Renfrow reported problems with the 14DailyPlus.com website, which required some reorganization and delays in payments.

j.  Fox recruited Art Ruby to become part of 14DailyPlus.com and encouraged Mr. Ruby to make the investment with cash.

k.  During a conference call with Art Ruby, Renfrow stated everyone who participated in 14DailyPlus.com would be paid, and when a participant in the conference call had specific questions about payments, then they were accused of not being a "team player," and threatened with having their account closed. Explanations by Fox for delays in payment included health issues for Renfrow, SafePay Solutions, Inc. not releasing funds, or glitches with the Internet payment system.

l.  During conference calls with Willis Smith, Renfrow encouraged people to invest with 14DailyPlus.com, and assured the participants that no one would ever lose money because the initial investment would always be returned. Renfrow explained payments were delayed until more people invested with 14DailyPlus.com, so the capital fund would be increased and allow for returns to be paid.

m.  During a conference call with Don Stroh, Renfrow stated no one would lose their money in connection with 14DailyPlus.com.  Renfrow explained investments could be made by sending a wire transfer to Renfrow's personal Bank of America account from the "investor's" bank account or directly depositing funds into Renfrow's Bank of America account at any local Bank of America branch.

**Cash "Investments"**

27.  The defendants and conspirators solicited cash from "investors" as the method of payment to commence their involvement in 14DailyPlus.com.  Those cash payments to the defendants and conspirators occurred as follows:

| Date | Victim | Promoter/Recruiter | Amount |
|---|---|---|---|
| Summer-Fall 2006 | Art Ruby | Fox | $    15,000 |
| October 2006 | Matt Becker | Fox | 9,000 |
| October 2006 | Russ Pitts | Fox | 9,000 |
| November 2006 | Russ Pitts | Fox | 9,000 |
| Fall 2006 | Eric Fellows | Fox | 3,500 |
| November 2006 | Jason Houchen | Fox | 26,108 |
| Fall 2006 | Jason Houchen | Fox | 2,300 |
| Fall 2006 | Russ Pitts | Fox | 49,350 |
| Summer 2006-Summer 2007 | Robert Montgomery | Fox | 72,000 |
| **Total** | | | $ 195,258 |

**Non-Cash "Investments"**

28.  The defendants and conspirators solicited "investments" that were also paid in methods other than cash to commence their involvement in 14DailyPlus.com.  Those payments to the defendants and conspirators were wire-transferred from the "investors" accounts into Renfrow's accounts with Heritage Community Credit Union #XX4422 or Bank of America #XXXXXX6504 or XXXXXX4596, or directly deposited by the "investor" into Renfrow's accounts with Heritage Community Credit Union or Bank of America as follows:

| Date | Victim | Transaction | Account | Amount |
|---|---|---|---|---|
| June 15, 2006 | Willie Watson | Deposit in California | 4422 | $    3,000 |
| July 25, 2006 | William Walters | Wire Transfer from Kansas to California | 6504 | 18,000 |

10

| August 18, 2006 | Eric Fellows | Wire Transfer from Kansas to California | 4596 | 15,504 |
|---|---|---|---|---|
| August 22, 2006 | Aubrey Meyer | Wire Transfer from Kansas to California | 4596 | 6,000 |
| August 24, 2006 | William Walters | Wire Transfer from Kansas to California | 4596 | 9,000 |
| August 28, 2006 | Aubrey Meyer | Wire Transfer from Kansas to California | 4596 | 6,000 |
| August 31, 2006 | Eric Fellows | Wire Transfer from Kansas to California | 4596 | 1,488 |
| September 1, 2006 | Freddy Kandah | Wire Transfer from Michigan to California | 4596 | 3,000 |
| September 6, 2006 | James Rizqalla | Wire Transfer from Michigan to California | 4596 | 5,000 |
| September 6, 2006 | James Rizqalla | Wire Transfer from Michigan to California | 4596 | 5,000 |
| October 24, 2006 | Robert Montgomery | Wire Transfer from Kansas to California | 4596 | 10,500 |
| October 31, 2006 | Charles Malley | Wire Transfer from Texas to California | 4596 | 9,000 |
| November 10, 2006 | Charles Malley | Wire Transfer from Texas to California | 4596 | 7,000 |
| November 20, 2006 | Charles Malley | Wire Transfer from Texas to California | 4596 | 2,000 |
| November 29, 2006 | Don Stroh | Wire Transfer from Kansas to California | 4596 | 9,000 |
| November 29, 2006 | Don Stroh | Wire Transfer from Kansas to California | 4596 | 9,000 |
| December 8, 2006 | Susan Bottino | Deposit in California | 4596 | 14,000 |

| December 11, 2006 | Don Stroh | Wire Transfer from Kansas to California | 4596 | 9,000 |
|---|---|---|---|---|
| December 11, 2006 | Don Stroh | Wire Transfer from Kansas to California | 4596 | 9,000 |
| December 11, 2006 | Travis Salmon | Wire Transfer from Missouri to California | 4596 | 2,500 |
| **Total** | | | | $152,992 |

### Monetary Transactions

29.  On or about the dates below, Renfrow knowingly engaged in the monetary transactions identified below, which were by, through, and to a financial institution and affected interstate commerce, in criminally derived property of a value greater than $10,000, with deposits, withdrawals, and transfers of U.S. currency, funds, and monetary instruments in the following amounts, such property having been derived from wire fraud, which is a specified unlawful activity:

| Date | Monetary Transaction | Amount |
|---|---|---|
| August 3, 2006 | Cash withdrawal from 6504 | $ 15,000.00 |
| August 11, 2006 | Wire transfer from 6504 to SafePay Solutions, Inc. | 50,000.00 |
| August 17, 2006 | Wire transfer from 6504 to SafePay Solutions, Inc. | 100,000.00 |
| August 25, 2006 | Wire transfer from 4596 to SafePay Solutions, Inc. | 40,000.00 |
| August 29, 2006 | Wire transfer from 4596 to Ameritrade account 0369 | 20,000.00 |
| August 31, 2006 | Wire transfer from 4596 to SafePay Solutions, Inc. | 30,000.00 |

| September 6, 2006 | Wire transfer from 4596 to SafePay Solutions, Inc. | 30,000.00 |
|---|---|---|
| October 16, 2006 | Account transfer from 4596 to 6504 | 14,000.00 |
| October 16, 2006 | Check #2007 drawn on account #6504 payable to Saturn of Roseville | 13,233.77 |
| October 25, 2006 | Account transfer from 4596 to 6504 | 33,000.00 |
| October 30, 2006 | Check #2008 drawn on account #6504 payable to Saturn of Roseville | 29,950.00 |
| November 10, 2006 | Wire transfer from 4596 to SafePay Solutions account 3103 | 60,000.00 |
| November 29, 2006 | Account transfer from 4596 to SafePay Solutions account 3103 | 30,000.00 |
| December 1, 2006 | Cash withdrawal from 4596 | 20,000.00 |
| December 11, 2006 | Account transfer from 4596 to SafePay Solutions account 3103 | 21,000.00 |

30.  As additional overt acts, the Grand Jury incorporates by this reference the allegations set forth in Count 2 of the Indictment as though fully set forth at this point.

31.  This was all in violation of Title 18, United States Code, Sections 371 and 1349.

## Count 2

## WIRE FRAUD

32.  The allegations of paragraphs 1-31 above are incorporated as though fully set out herein.

33.  On or about April 26, 2007, in the District of Kansas and elsewhere, the defendants,

13

ANTHONY RENFROW
and
WILLIAM "BILL" FOX,

for the purpose of executing the scheme to defraud, transmitted and caused to be

transmitted in interstate commerce, by means of a wire communication, certain signs,

signals, and sounds, that is, a web-based conference call with participants in Kansas

and California, to assure participants in 14DailyPlus.com that their "investments" were

safe and none would lose their "funds."

34.  This was in violation of Title 18, United States Code, Sections 2 and 1343.

<u>Forfeiture Allegation</u>

35.  Upon conviction of one or more of the offenses alleged in Counts 1-2, the

defendants,

ANTHONY RENFROW
and
WILLIAM "BILL" FOX,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property

constituting or derived from proceeds obtained directly or indirectly as a result of the

said violations, including but not limited to the following:

**Money Judgment**

36.  A sum of money approximately $4,825,000.00 in United States currency,

representing the amount of proceeds obtained as a result of the offenses set out in

Counts 1-2, for which the defendants are jointly and severally liable.

**Substitute Assets**

37.  If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred, sold to, or deposited with a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek

forfeiture of any other property of said defendants up to the value of the forfeitable

property described above.

    38.  This is all in accordance with Title 18, United States Code, Sections

981(a)(1)(c) and 982(a)(1); Title 28 United States Code, Section 2461 (c); and Rule

32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL.

Dated: <u>April 18, 2012</u>                            <u>s/Foreperson</u>
                                                          FOREPERSON

<u> s/Scott C. Rask, #15643 for  </u>
BARRY R. GRISSOM
United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas  66101

15

(913) 551-6730
(913) 551-6541 (fax)
Barry.Grissom@usdoj.gov
Ks. S. Ct. No. 10866

(It is requested that trial of the above captioned case be held in Kansas City, Kansas.)

Penalties:

Cts. 1-2:    NMT 20 years imprisonment; NMT $250,000 or 2xgain or 2xloss fine; NMT 3 years supervised release; $100 special assessment; forfeiture allegation