IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY RENFROW,<br><br>Defendant. | FILED IN OPEN COURT<br>5-21-15<br>TIMOTHY M. O'BRIEN, CLERK<br>BY _____<br>DEPUTY CLERK<br><br>Case No. 12-20041-01-CM |

### PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America, by Scott C. Rask, Assistant U.S. Attorney, and Anthony Renfrow, the defendant, personally and by and through defendant's counsel, Tom Bartee, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** If the Court permits, the defendant agrees to plead guilty to Count 1 of the Indictment, which charges a violation of Title 18, United States Code, Sections 371 and 1349, that is, Conspiracy to Commit Wire Fraud and Engage in Monetary Transactions Greater than $10,000. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant agrees to plead guilty by May 21, 2015. The defendant understands that the maximum sentence which may be imposed as to Count 1 to which the defendant has agreed to plead guilty is not more than twenty years of imprisonment, a $250,000 fine, three years of supervised release, restitution as determined by the Court, forfeiture, and a $100 mandatory special assessment. The United States agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

2. **Forfeiture of Assets.** The defendant agrees to the imposition of a forfeiture judgment against him in the amount of $1.676 million, which sum represents proceeds obtained through the scheme charged in Count 1. The defendant knowingly and voluntarily waives his right to a jury trial regarding forfeiture, and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of the property listed herein. The defendant acknowledges and agrees that the forfeiture of this property shall not be deemed an alteration of defendant's sentence or this agreement and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the preliminary order of forfeiture, and agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

3. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

> Anthony Renfrow, the defendant, commenced a pyramid scheme known as 14DailyPlus.com during the spring of 2006. 14DailyPlus.com was an Internet website that fraudulently offered opportunities for "investors" to join as members and use an "autosurf" form of advertising. 14DailyPlus.com was a company incorporated in Nevada with a registered address in Las Vegas, Nevada.
>
> "Autosurfing" was a form of advertising in which "investors" were purportedly paid to view an advertiser's website for a certain period of time through the 14DailyPlus.com website. 14DailyPlus.com "autosurf investors" paid a membership fee and were promised a per-site commission return on the fee. "Autosurf investors" could pay an additional fee to upgrade their level, with commissions based on the member's viewing a minimum number of sites. 14DailyPlus.com offered a return of 14% per day for a period of ten days totaling a 140% return on the investment.
>
> By the summer of 2006, codefendant William Fox had joined 14DailyPlus.com, and was a primary recruiter and promoter of 14DailyPlus.com in the Kansas City metropolitan area. The scheme to defraud employed by the defendant, codefendant Fox, and others included the following.

    a. Recruiting individuals to become investors in 14DailyPlus.com, when in truth and in fact there was no investment vehicle.
    b. The enticement utilized to recruit purported investors was the 14% daily return on the purported investment, when in truth and in fact such a return was completely unrealistic.
    c. The falsely promised "return" on the purported investment was realized by merely clicking on certain web pages for a limited amount of time each day.
    d. The recruitment of additional "investors" was used as the basis for the individuals to receive the "return" on the original "investment," when in truth and in fact no such returns were made to the "investors."
    e. Solicited "investment" funds to be paid in cash up to $9,000, which made the tracing of funds more difficult and avoided currency transaction reporting requirements.
    f. Regularly conducted conference calls via telephone and the Internet for recruitment of new "investors" and conveying assurances of the program, when in truth and in fact, these were utilized to lull the individuals into believing the program was a legitimate investment vehicle.
    g. Promising returns on the "investments" despite having no secured method to process payment of the investment returns.

    Some specific instances in which this scheme to defraud was employed by the defendant and other conspirators included the following, which involved the use of wire communications in interstate commerce. During a conference call with Matt Becker, the defendant specifically assured 14DailyPlus.com "investors" that their funds were safe and that no one would lose their funds or "investment" despite the delay in payments being made to the "investors." The defendant asserted the delay in payments of returns was due to problems associated with the Internet payment entities, and nothing more. The defendant's explanation for lack of payment included a tale that his E-Gold account had been "hacked," so the defendant was awaiting pay-out from another investment to then satisfy payments in 14DailyPlus.com. During a group conference call with Russ Pitts, the defendant directed people to not refer to 14DailyPlus.com as an "investment," despite the defendant having done so repeatedly. During a group conference call with James Rizqalla, the defendant reported problems with the 14DailyPlus.com website, which required some reorganization and was the cause of delays in payments. During a group conference call with Art Ruby, the defendant stated everyone who participated in 14DailyPlus.com would be paid. During a group conference call with Don Stroh, the defendant stated no one would lose their money in connection with 14DailyPlus.com. Individuals were told "investments" could be made by sending a wire transfer to the defendant's personal Bank of America account from the "investor's" bank account or directly depositing funds into the defendant's Bank of America account at any local Bank of America branch.

3

The "investors" were recruited through these ploys and encouraged to either deposit their "investment" into one of the defendant's accounts with Bank of America or wire-transfer funds into the defendant's account. Alternatively, codefendant Fox encouraged "investors" to provide him with cash. At least six "investors" provided approximately $195,000 cash to codefendant Fox as part of this scheme. At least twelve investors deposited or wire-transferred approximately $170,000 into the defendant's bank accounts, and the defendant then used the funds for personal expenditures with multiple monetary transactions involving proceeds of the wire fraud in excess of $10,000. At least 202 "investor" victims have been identified, who lost approximately $1.676 million.

4. **Proposed (c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case, a sentence of not greater than 1 year and 1 day in prison on count 1; three years of supervised release; no fine; restitution as determined by the Court; forfeiture judgment of $1.676 million; and the mandatory special assessment of $100. The parties seek this binding plea agreement as an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck if the Court permits itself to be bound by the proposed sentence; the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this plea agreement. This agreement centers on the defendant's agreement to enter defendant's guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, public defender, probation office, U.S. Marshals Service and other law enforcement resources.

5. **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the now advisory sentencing guidelines, but because this proposed sentence is sought pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

6.  **Government's Additional Agreement.**  In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas also agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the indictment.

7.  **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.**  The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8.  **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.**  On the other hand, if the Court agrees to be bound by proposed plea agreement and accepts the defendant's plea of guilty, the defendant will not be permitted to withdraw it. Only if the Court rejects the proposed plea agreement will the defendant be permitted to withdraw defendant's guilty plea.

9.  **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $100 will be entered against the defendant at the time of sentencing. If the defendant is without adequate resources to pay the special assessment at the time of sentencing, then the parties will recommend that the Court order payment to occur during the defendant's period of incarceration.

10. **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, and the components of the sentence to be imposed herein including the length and conditions of supervised release and any sentence imposed upon a revocation of probation or supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering

into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change defendant's sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

11. **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

12. **Full Disclosure by United States.** The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's

criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty. The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

13. **Parties to the Agreement.** The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

14. **Identification of Assets & Agreement Concerning Monetary Penalties.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically:

   a.  Provide a financial statement on a form approved by the USAO that discloses all assets in which defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party, as well as any transfer of assets that has taken place within 3 years preceding the entry of this plea agreement.

   b.  Submit to an examination, which may be taken under oath and may include a polygraph examination.

   c.  Acknowledges that any waivers, consents, or releases signed by the defendant for purposes of the Presentence Investigation Report extends to the USAO.

   d.  Will not encumber, transfer, or dispose of any monies, property or assets under his/her custody or control, without written approval from the USAO.

   e.  The defendant understands and agrees that, pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the court will be due and payable immediately and

7

subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

f. The defendant authorizes the U.S. District Court to release the funds posted as security for the defendant's appearance bond in this case to be applied to satisfy the financial obligations of the defendant, pursuant to the judgment of the Court.

g. The defendant waives any requirement for demand of payment on any fine, restitution, or assessment the District Court announces on the record the day of sentencing.

15. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, the defendant acknowledges that defendant has had the plea agreement read to defendant, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

_____     Date: 5-21-15

Scott C. Rask
Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101

8

(913) 551-6730
(913) 551-6541 (fax)
Scott.Rask@usdoj.gov
Kan. S. Ct. No. 15643

Date: 5/21/15

Kim I. Martin
Criminal Coordinator
Kan. S. Ct. No. 13407

Date: 5-21-15

Anthony Renfrow
Defendant

Date: 5-21-15

Tom Bartee
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
(913) 551-6712
(913) 551-6562 (fax)
Tom_Bartee@fd.org
Kan. S. Ct. No.  15133
Counsel for Defendant

9